IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEXT FINANCIAL GROUP, INC., | ) | Case No. 3:19-cv-168 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| GMS MINE REPAIR AND | ) | |
| MAINTENANCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  Introduction

This case arises from a fraudulent investment scheme perpetrated by Douglas P. Simanski, a former employee of Plaintiff Next Financial Group, Inc., and a subsequent arbitration proceeding with the Financial Industry Regulatory Authority ("FINRA")[1] commenced by Defendant GMS Mine Repair and Maintenance, Inc.  Pending before the Court are Plaintiff's Motion for Preliminary Injunction (ECF No. 2) and Defendant's Motion to Compel Arbitration. (ECF No. 10.)  The Motions are fully briefed (ECF Nos. 3, 14, 15, 17) and ripe for disposition.  For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion.

---

[1] FINRA was created in 2007 through a consolidation of the National Association of Securities Dealers, Inc.—a self-regulatory organization registered under the Securities Exchange Act—and the regulatory arm of the New York Stock Exchange Group, Inc.  *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011).  FINRA has the authority to create and enforce rules for its members in order to provide regulatory oversight of all securities firms that do business with the public. *Id.*

## II.    Jurisdiction and Venue

This Court has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania.  28 U.S.C. § 1391(b)(2).

## III.    Factual Background

The following facts are undisputed unless otherwise noted.[2]

### A.  Simanski's Fraud

From August 1999 to May 2016, Simanski was registered under FINRA as a representative of Plaintiff, and from May 2012, was also an investment advisor representative with Plaintiff. (ECF No. 1-2 at 16.)  Plaintiff is dually registered as a broker-dealer and investment advisor with the Securities Exchange Commission ("SEC") and is also a member of FINRA.  (*Id.*; ECF No. 1 ¶ 2.)

In 2012, Simanski met Courtland Helbig, Defendant's President, and convinced Defendant to invest $3.45 million into a black diamond mine project.  (ECF No. 1-2 ¶¶ 8–9.) Defendant invested $1.25 million of its own money and received a loan for an additional $2.2 million to invest.  (*Id.* ¶ 9.)  In June 2019, Defendant learned that this investment scheme was part of a larger ponzi scheme executed by Simanski.  (*Id.* ¶¶ 14–15.)  On November 5, 2018, Simanski pleaded guilty to violating provisions of the Securities Exchange Act and was later sentenced to a term of imprisonment.  (*Id.* at 16.)

---

[2] The Court derives these facts from a combination of Plaintiff's Complaint (ECF No. 1) and Defendant's Statement of Claim.  (ECF No. 1-2.)

At the time of his guilty plea, the SEC filed a complaint against Simanski, asking this Court to enjoin Semanski from future violations of the Securities Exchange Act. (*Id.*) That complaint alleged that, while associated with Plaintiff and acting as an investment adviser to his clients, Simanski engaged in a scheme to defraud his clients, asking them to send money to him to invest in companies which he claimed to own or operate. (*Id.*) Simanski did not invest the money and instead used it to pay other investors and for his personal expenses. (*Id.*) This Court granted the requested relief and enjoined Semanski from future violations of the Securities Exchange Act. (*Id.*)

### B. Defendant Initiates FINRA Arbitration

On September 12, 2019, Defendant initiated an arbitration proceeding with FINRA by filing a statement of claim against Plaintiff on September 12, 2019 (the "FINRA Arbitration"). (ECF No. 1 ¶ 9.) In the FINRA Arbitration, Defendant seeks to hold Plaintiff liable for its losses incurred through Simanski's fraudulent scheme. (*Id.* ¶ 13.) On October 8, 2019, Plaintiff filed a request with the FINRA Director to decline the use of the FINRA arbitration forum for the dispute. (ECF No. 15-1.) The FINRA Director denied the request on November 1, 2019. (ECF No. 15-4.)

### IV. Procedural Background

On October 16, 2019, Plaintiff filed a Complaint (ECF No. 1) and a Motion for Preliminary Injunction (ECF No. 2), asking the Court to enjoin the FINRA Arbitration. In response, Defendant

filed a Motion to Compel Arbitration on December 2, 2019.[3] (ECF No. 10.) The Court held oral

argument on both Motions on February 5, 2020. (ECF No. 18.)

## V.    Legal Standards

### A. Compelling Arbitration

Federal courts are empowered to compel arbitration under Section 4 of the Federal

Arbitration Act. 9 U.S.C. § 4. A court grants a motion to compel arbitration under a Rule 12(b)(6)

standard when it is apparent based on the face of the pleadings that the claims are arbitrable.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). When assessing

the pleadings, the court construes the well-pleaded factual allegations in the light most favorable

to the nonmoving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

### B. Injunctive Relief

In deciding whether to grant injunctive relief, a court considers whether: (1) the moving

party has shown likely success on the merits; (2) the moving party will be irreparably injured

without of injunctive relief; (3) the injunction would harm the nonmoving party more than

denying relief would harm the moving party; and (4) the injunction would be in the public

interest. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). To obtain injunctive relief, the

moving party must show by a preponderance of evidence that it is entitled to relief. *Brandt v.*

*Burwell*, 43 F. Supp. 3d 462, 483 (W.D. Pa. 2014).

---

[3] Plaintiff argues that the Court must dismiss Defendant's Motion to Compel because it is not an appropriate responsive motion to a complaint under Federal Rule of Civil Procedure 12. (ECF No. 14 at 2.) Defendant responds that its Motion is an appropriate response pursuant to Section 4 of the Federal Arbitration Act. (ECF No. 17 at 1.) The Court holds that Defendant's Motion to Compel Arbitration is not procedurally defective because, in effect, it is treated like a Rule 12(b)(6) motion to dismiss.

## VI. Discussion

### A. The Court, Not an Arbitrator, Decides the Gateway Question of Arbitrability

Courts decide whether a dispute is arbitrable unless the parties delegate the threshold question of arbitrability to an arbitrator. *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70, 72 (2010)). Typically, this is done through a delegation clause in an arbitration agreement. *Id.* Courts should not assume that the parties agreed to arbitrate the issue of arbitrability unless there is "clear and unmistakable" evidence that they did so. *Rent-A-Ctr.*, 561 U.S. at 69 n.1. The party challenging the presumption against delegation faces an "onerous burden" and must show "express contractual language unambiguously delegating the question" to an arbitrator. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016).

Defendant argues that the Court should not decide whether this dispute is arbitrable because Plaintiff delegated the issue of arbitrability to an arbitrator, the Director of the FINRA Office of Dispute Resolution. (ECF No. 15 at 5.) Defendant asserts that Plaintiff delegated the issue to the FINRA Director by: (1) filing a request to decline the use of FINRA arbitration forum; and (2) filing a reply to Defendant's response in opposition. (*Id.*)

The Court holds that Plaintiff did not delegate the threshold issue of arbitrability to an arbitrator. There is no arbitration agreement between the parties and accordingly no delegation clause that delegates the question of arbitrability to an arbitrator. Plaintiff's filings in the FINRA proceeding do not constitute clear and unmistakable evidence that Plaintiff intended to delegate the question of arbitrability to the FINRA arbitrator. Nowhere in Plaintiff's statements to the FINRA Director did Plaintiff state that it was delegating the question of arbitrability to FINRA.

Plaintiff's filing, by itself, is not enough for Defendant to meet its onerous burden that the Court should not determine the arbitrability of this dispute.[4]

## B. The Dispute Is Arbitrable Under FINRA

### 1. The Parties' Arguments

Defendant argues that this dispute is arbitrable under FINRA because Defendant is Plaintiff's customer. (ECF No. 15 at 16.) Defendant was a customer of Simanski, Plaintiff's associated person, because Defendant received financial investment advice from Simanski while he was associated with Plaintiff. (*Id.* at 19–20.) Because the customer of a FINRA member's associated person is entitled to arbitrate against the member itself if the claim arises out of the associated person's business activities, this dispute is arbitrable. (*Id.*)

Plaintiff responds that this dispute is not arbitrable because Defendant was not Plaintiff's customer. (ECF No. 3 at 2.) Defendant never had a brokerage account with Plaintiff, did not purchase any securities from Plaintiff, and did not receive investment guidance from Plaintiff. (*Id.* at 2–3.) Moreover, there is no agreement to arbitrate between the parties. (*Id.* at 5.) Plaintiff asserts that Simanski's role in the case is not a basis for arbitration because Simanski was not acting as an associated person of Plaintiff. (*Id.* at 7.) Simanski's involvement in the mine operation was wholly independent, separate, and distinct from any work he performed, or

---

[4] Defendant also argues that Plaintiff waived the issue of arbitrability by participating in the arbitration process before seeking an injunction against arbitration. (ECF No. 15 at 6.) However, a party submitting to arbitration must "clearly indicate his willingness to forego judicial review" for waiver to be established and courts will not infer waiver where a party objects to the arbitrability of an issue even if the party participates in the arbitration. *Pa. Power Co. v. Local Union No. 272 of Int'l Bhd. of Elec. Workers, AFL-CIO*, 886 F.2d 46, 50 (3d Cir. 1989). In this case, Plaintiff objected to arbitrability of the dispute and has not indicated its willingness to waive judicial review. Accordingly, the Court holds that Plaintiff did not waive the issue of arbitrability.

services he rendered, on behalf of Plaintiff. (*Id.*) On his outside business activity disclosure form, Simanski disclosed his 100% ownership interest in Black Diamond Coal Company, meaning that he was not acting as an associated person of Plaintiff when Defendant invested with him. (*Id.*)

## 2. Defendant Was Plaintiff's Customer

For a dispute to be arbitrable under FINRA, it must meet three requirements: (1) FINRA arbitration is required by a written agreement or requested by the customer; (2) the dispute is between a customer and a member or associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person. FINRA Rule 12200. At issue in this case are the terms "associated person of a member," "customer," and "business activities."

An "associated person of a member" includes a natural person who is registered or has applied for registration under the Rules of FINRA. FINRA Rule 12100(b), (u). Simanski was an associated person of Plaintiff because Simanski was registered under the Rules of FINRA as a representative of Plaintiff.

The FINRA Code does not define "customer," except to say that a "customer shall not include a broker or dealer." FINRA Rule 12100(k). Although the Third Circuit has not interpreted the scope of "customer" as used in FINRA, other Federal Courts of Appeal that have interpreted customer have tied the definition to the FINRA member's business activities.

For example, the Second Circuit created a "bright-line rule" for determining who is a "customer" under FINRA as one who either: (1) purchases a good or service from a FINRA member; or (2) has an account with a FINRA member. *Citigroup Glob. Markets, Inc. v. Abbar*, 761 F.3d 268, 276 (2d Cir. 2014). The Fourth Circuit similarly interpreted "customer" as an entity who

"purchases commodities or services from a FINRA member in the course of the member's business activities," namely, "the activities of investment banking and the securities business." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013). The Eighth Circuit defined "customer" as one "involved in a business relationship with a FINRA member that is related directly to investment or brokerage services." *Berthel Fisher & Co. Fin. Servs. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012). The Ninth Circuit likewise held that a "customer" is one "who purchases commodities or services from a FINRA member in the course of the member's FINRA-regulated business activities, i.e., the member's investment banking and securities business activities." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014). These courts rejected the interpretation that a customer is anyone who is not a broker or dealer; instead each court tied the definition of "customer" to the FINRA member's business activities in the securities and investing field.

The Court agrees with those courts' interpretation of customer and holds that a customer within Rule 12200 must be one who either: (1) purchases commodities or services from a FINRA member in the course of the member's investment banking and securities business; or (2) has an account with a FINRA member. For an associated person to be acting in the course of a FINRA member's business activities, his actions must have "some connection" to his business relationship with the FINRA member. *Pictet Overseas Inc. v. Helvetia Tr.*, 905 F.3d 1183, 1189 (11th Cir. 2018). This interpretation of "customer" is consistent with how other district courts in the Third Circuit have interpreted the term. *See, e.g., Hunsinger v. Carr*, No. 14-cv-2302, 2016 WL 2996782, at *5 (E.D. Pa. May 24, 2016); *Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 713 (E.D. Pa. 2015).

Here, Defendant is a customer of Plaintiff because Defendant purchased investment services from Simanski, an associated person of Plaintiff. Simanski provided investment advice to Defendant about a black diamond mining project, which is within Plaintiff's business activities because Plaintiff is in the business of providing investment advice. It is not necessary for Simanski to be acting in his capacity as a representative of Plaintiff when he provided investment advice to Defendant for this dispute to be arbitrable—that is ultimately the merits issue of this dispute. All that is required for this dispute to be arbitrable under FINRA is for Simanski's actions to have "some connection" to his business relationship with a FINRA member. Simanski's investment advice about the mining project has some connection to his investment work with Plaintiff. Because Defendant was a customer of Plaintiff's associated person, this dispute is arbitrable under FINRA.

### C. Plaintiff Is Not Entitled to Injunctive Relief

Because the dispute is arbitrable, Plaintiff has not shown likely success on the merits and cannot show by a preponderance of the evidence that it is entitled to injunctive relief.

## VII. Conclusion

For the forgoing reasons, the Court grants Defendant's Motion to Compel Arbitration and denies Plaintiff's Motion for Preliminary Injunction.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEXT FINANCIAL GROUP, INC., | ) | Case No. 3:19-cv-168 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| GMS MINE REPAIR AND | ) | |
| MAINTENANCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 26th day of February, 2020, upon consideration of Plaintiff's Motion for Preliminary Injunction (ECF No. 2) and Defendant's Motion to Compel Arbitration (ECF No. 10), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE